FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 FEB 19 AM 9 44

STEPHAN HARRIS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT
## for the
## District of Wyoming

**UNITED STATES OF AMERICA**

v.

**ANDREW SILICANI**

**AMENDED CRIMINAL COMPLAINT**

CASE NUMBER: 15-MJ-13-1=

I, TODD SCOTT, the complainant in this case, state the following is true to the best of my knowledge and belief.

From on or about January 5, 2015, through and including the date of this Complaint, in the District of Wyoming and elsewhere, the Defendant, **ANDREW SILICANI**, used the mail with intent that the murders of _____ and _____ be committed in violation of the laws of the State of Wyoming as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $100,000.

In violation of 18 U.S.C. § 1958.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

TODD SCOTT, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/19/15

_____
*Judge's signature*

Hon. Kelly H. Rankin
Chief United States Magistrate Judge
*Printed name and title*

City and state: Cheyenne, WY

# SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT TODD SCOTT
### *U.S. v. ANDREW SILICANI*

1. Your Complainant is a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and has been employed by the FBI since 1998. Upon completion of his training at Quantico your Complainant was assigned to the Cheyenne, Wyoming, Resident Agency of the FBI, where your Complainant is responsible for investigating violations of federal law. Prior to being employed as a Special Agent for the FBI, your Complainant served as a police officer in St. Louis, MO, 11 years.

2. This sworn statement is being submitted for the limited purpose of establishing probable cause in support of the attached application for an amended criminal complaint, and therefore contains only a summary of the relevant facts. Your Complainant has not included each and every fact known to him concerning this investigation. Your Complainant knows the following information through investigation, interviews, database checks and conversing with other law enforcement personnel.

3. Your Complainant was informed by Paul Kanish, a Special Agent with the FBI, that on November 6, 2014, at approximately 1330 hours local time, a confidential human source (CHS), reported to Wyoming State Penitentiary (WSP) staff that a WSP inmate, **ANDREW SILICANI**, wanted to kill his (**SILICANI**'s) parents. **SILICANI** approached CHS and asked if CHS would be willing to kill his (**SILICANI**'s) parents. **SILICANI** told CHS that he (**SILICANI**) could get one half million dollars and he (**SILICANI**) would give half to CHS. CHS declined.

4. Kanish further informed your Complainant on November 6, 2014, at approximately 1500 hours local time, CHS was contacted by WSP staff. CHS reported that

SILICANI advised that his (SILICANI's) parents had large life insurance policies and SILICANI wanted them dead.

5. Kanish further informed your Complainant on November 13, 2014, CHS was contacted by WSP staff. CHS reported that SILICANI openly discussed wanting to kill his (SILICANI's) parents. SILICANI also wrote in a notebook how much money he (SILICANI) would receive if his (SILICANI's) parents were dead.

6. Kanish further informed your Complainant that on November 19, 2014, he reviewed a telephone call placed by SILICANI to Guy Hunter from the WSP on October 19, 2014. In the telephone call SILICANI told Hunter that he (SILICANI) was going to obtain a significant amount of money and his (SILICANI's) bank account would be in the "hundred G's". SILICANI also discussed his (SILICANI's) mother's life insurance payout to him (SILICANI), and how he (SILICANI) would get more money if his (SILICANI's) step father was "gone". Hunter asked if SILICANI was going to "take out" his (SILICANI's) own father. SILICANI did not respond with a "yes" or "no" but stated "things are in play".

7. Kanish further informed your Complainant that on November 21, 2014, he contacted CHS. CHS advised that approximately three weeks prior, SILICANI asked CHS to kill his (SILICANI's) adoptive parents. SILICANI's adoptive parents were described as his (SILICANI's) mother and step-father. SILICANI wanted to kill his (SILICANI's) parents in order to receive their insurance money and house. SILICANI had a notebook in which he (SILICANI) recorded the potential payout of both life insurance policies and the house. The total was estimated at $850,000. SILICANI told CHS the plan he (SILICANI) thought of for CHS to murder his (SILICANI's) parents. CHS advised that SILICANI spoke to other WSP inmates about killing his (SILICANI's) parents.

8. Kanish further informed your Complainant that on November 24, 2014, he obtained a report that provided **SILICANI**'s identifying information as well as **SILICANI**'s family members. **SILICANI**'s full name was listed as **ANDREW             SILICANI**. **SILICANI**'s date of birth was listed as             1991. **SILICANI**'s adoptive mother was             address             **SILICANI**'s adoptive father was             , address             

9. Kanish further informed your Complainant that on November 24, 2014, he obtained a report that provided        's identifying information.        was listed as a potential significant other.

10. Kanish further informed your Complainant that on November 24, 2014, he obtained a report that provided        's identifying information.         resided at             , the same address as        .

11. Kanish further informed your Complainant that on December 1, 2014, he received telephone call summaries for calls made by **SILICANI** from the WSP. On a telephone call placed on October 28, 2014, **SILICANI** described        's life insurance policy as being $500,000 split between **SILICANI** and        . On a telephone call placed on November 29, 2014, **SILICANI** mentioned that he (**SILICANI**) had a notebook that he (**SILICANI**) records numbers about money in.

12. Kanish further informed your Complainant that on December 17, 2014, he contacted CHS. Kanish advised CHS that he would pose as a hit man in order to determine **SILICANI**'s intentions. Kanish provided CHS with the code word "Demolition Work" as a code for conducting a murder for hire. Your Complainant also provided CHS with the FBI Covert Post Office Box number (CPOB) and the instruction to address any mail to the CPOB to

"Drake & Associates". Your Complainant advised CHS to provide this information to **SILICANI**.

13. Kanish further informed your Complainant that on December 23, 2014, he learned of      s new address                                     .

14. Kanish further informed your Complainant that on December 29, 2014, he received a letter from CHS in the CPOB. CHS informed Kanish that **SILICANI** offered CHS $2,000 as a finder's fee for the hit man if CHS waited to collect after **SILICANI**'s parents were killed. **SILICANI** told CHS that after his (**SILICANI**'s) parents         were killed and he (**SILICANI**) collected the money from the insurance, car, and house, he wanted his (**SILICANI**'s) father         killed so he (**SILICANI**) could collect additional money. There was a separate letter from CHS in the CPOB. CHS confirmed that the CPOB was provided to **SILICANI**. CHS informed Kanish that **SILICANI** told CHS that, had CHS not hooked **SILICANI** up with the hit man, **SILICANI** would have pursued finding someone else to kill his (**SILICANI**'s) parents.

15. Kanish further informed your Complainant that on January 5, 2015, Kanish received a letter from **SILICANI** in the CPOB. In the letter **SILICANI** requested Kanish's assistance with "Demolition Work".

16. Kanish further informed your Complainant that on January 8, 2015, Kanish mailed a response letter to **SILICANI**. Kanish requested the names, addresses, and time frame for each demolition project. Kanish also asked **SILICANI** how much he (**SILICANI**) was willing to pay.

17. Kanish further informed your Complainant that on January 12, 2015, Kanish received a letter from CHS in the CPOB. CHS informed Kanish that **SILICANI** told CHS that

SILICANI mailed the original response letter to the CPOB on December 28, 2014. SILICANI was anxious to receive a response back.

18. Kanish further informed your Complainant on January 21, 2015, Kanish received a letter from SILICANI in the CPOB. In the letter SILICANI provided the names of            and      . SILICANI provided an address of                                         for both individuals (            and    ). SILICANI also provided a deadline "by the end of next month". SILICANI advised he (SILICANI) did not want to pay more than $100,000 for both individuals (          and       .

19. Kanish further informed your Complainant on January 21, 2015, Kanish received a letter from CHS in the CPOB. In the letter CHS reported that SILICANI would give CHS $5,000 "if the hitman doesn't ask for more then [sic] $100,000". The CHS advised SILICANI was very excited, and that SILICANI told CHS he (SILICANI) plans to buy a Cadillac Escalade, clothes, and jewelry.

20. Kanish further informed your Complainant that on January 26, 2015, Kanish received a letter from CHS in the CPOB. In the letter CHS reported that SILICANI told CHS that if he (SILICANI) "is not in treatment (ITU) or (TC) by the end of February he [SILICANI] is going to ask to go to the hole". SILICANI told CHS that he (SILICANI) would be able to spend the rest of his (SILICANI's) time in the hole due to all of the money he (SILICANI) would be getting once his (SILICANI's) parents were "out of the picture". From experience, your Complainant knows "the hole" refers to isolated confinement.

21. Kanish further informed your Complainant that on January 26, 2015, Kanish drafted a response letter to SILICANI. Your Complainant mailed the letter to SILICANI that day. In the letter, Kanish said, "I've started researching          and        at the address you

provided. Based on my initial findings I'm comfortable with $100k." Kanish asked if there was any type of security system at the home. Kanish informed **SILICANI** that he, Kanish, would be setting up an attorney visit with **SILICANI** using the name "Drake Smith". Kanish requested that **SILICANI** provide the charges he (**SILICANI**) was in prison for as well as confirm that he (**SILICANI**) understood the name (Drake Smith) that Kanish would use to set up the attorney visit.

      22.    Kanish further informed your Complainant that on February 3, 2015, Kanish observed       at                      with a vehicle registered to her (     .

      23.    Kanish further informed your Complainant that on February 3, 2015, Kanish received a letter from **SILICANI** in the CPOB. In the letter **SILICANI** reported that there was a security system on the home and that he **SILICANI** could not provide information for the security codes. **SILICANI** also reported, "I understand that your name is Drake Smith, my attorney." **SILICANI** also listed the charges he (**SILICANI**) was currently in prison for.

**END OF AFFIDAVIT**

# PENALTY SUMMARY - COMPLAINT

**DEFENDANT NAME:** ANDREW SILICANI

**DATE:** February 12, 2015

**INTERPRETER NEEDED:** \_\_\_\_\_ Yes  \_\_✓\_\_ No

THE GOVERNMENT, PURSUANT TO RULE 18, F.R.Cr.P., WITH DUE REGARD FOR THE CONVENIENCE OF THE DEFENDANT, ANY VICTIM AND WITNESSES, AND THE PROMPT ADMINISTRATION OF JUSTICE, REQUESTS TRIAL BE HELD IN:

\_\_✓\_\_ Cheyenne  \_\_\_\_\_ Casper  \_\_\_\_\_ Lander  \_\_\_\_\_ No Preference

**VICTIM:**  \_\_✓\_\_ Yes  \_\_\_\_\_ No

**OFFENSE:** 18 U.S.C. § 1958

**PENALTY:**
0-10 YEARS IMPRISONMENT
$250,000 FINE
3 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT

**AGENT:** Paul A. Kanish II
**AUSA:** Thomas Szott

**ESTIMATED TIME OF TRIAL:** \_\_✓\_\_ 1-5 days  \_\_\_\_\_ more than 5 days

**THE GOVERNMENT WILL SEEK DETENTION IN THIS CASE:**

\_\_✓\_\_ Yes  \_\_\_\_\_ No

**The court should not grant bond because the Defendant is not bondable because there are detainers from other jurisdictions:**

\_\_✓\_\_ Yes  \_\_\_\_\_ No